UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA  :
                          :
                          :
        v.                :    Crim. No. 2:11-cr-161-1
                          :
KENNETH L. MILLER,        :
                          :
        Defendant.        :

**OPINION and ORDER**

Defendant Kenneth L. Miller is charged with aiding and
abetting an international parental kidnapping in violation of 18
U.S.C. § 1204 and 18 U.S.C. § 2.  Miller has moved to dismiss the
one-count indictment on two grounds:  one, that the indictment
fails to state an offense, and two, that venue in the District of
Vermont is improper.

**Background**[1]

In December 2000, Lisa Miller[2] entered into a civil union in
Vermont with Janet Jenkins.  In April 2002, Lisa Miller gave
birth to IMJ.  Miller and Jenkins's relationship disintegrated in
the fall of 2003, and Lisa Miller moved with IMJ from Vermont to
Virginia.  In November 2003, Lisa Miller filed to dissolve the
civil union in the Family Court of Rutland, Vermont.  In June
2004, the family court issued a temporary order awarding Lisa
Miller temporary legal and physical rights and responsibilities,

_____

[1] Facts set forth in this section are taken from the
criminal complaint in this case or are matters of public record.

[2] Lisa Miller and Kenneth Miller are not related.

and assigning Janet Jenkins temporary parent-child contact rights. After Miller repeatedly failed to allow any contact between IMJ and Jenkins, in September 2004 the family court found her in contempt for willful refusal to comply with the temporary visitation order. In November 2004, the family court determined that both Miller and Jenkins had parental interests in IMJ.

The family court's interlocutory orders were affirmed by the Vermont Supreme Court in 2006. *See Miller-Jenkins v. Miller-Jenkins ("M-J I")*, 2006 VT 78, ¶¶ 2, 72, 912 A.2d 951, 956, 974. In litigation commenced by Lisa Miller in Virginia, the Court of Appeals of Virginia held that the Vermont court had jurisdiction over the issues of custody and visitation, and that a Virginia court must extend full faith and credit to the custody and visitation orders of the Vermont court. *Miller-Jenkins v. Miller-Jenkins ("M-J II")*, 637 S.E.2d 330, 337-38 (Va. App. 2006); *see also Miller-Jenkins v. Miller-Jenkins ("M-J III")*, 661 S.E.2d 822, 827 (Va. 2008) (confirming the Court of Appeals' judgment as the law of the case).

In June 2007, following a trial on parental rights and responsibilities, the family court ordered sole physical and legal custody of IMJ to Lisa Miller, subject to Jenkins's visitation rights. The court warned Miller that continued interference with the relationship between IMJ and Jenkins could warrant a modification of the custody order. *See Miller-Jenkins*

*v. Miller-Jenkins* ("*M-J IV*"), 2010 VT 98, ¶ 5, 12 A.3d 768, 772 (mem.). Since 2007, Lisa Miller violated several visitation orders and was found in contempt of court seven times. *Id.* ¶ 7, 12 A.3d at 773.

Jenkins moved to modify the Rutland Family Court's order concerning parental rights and responsibilities in August 2009. On August 21, 2009, the family court held a hearing on Jenkins's motion. Lisa Miller did not attend, but filed an affidavit objecting to any exercise of Jenkins's visitation rights and arguing against any transfer of primary custody of IMJ to Jenkins. On November 20, 2009, the family court concluded that Miller had willfully interfered with Jenkins's visitation rights, and it awarded Janet Jenkins sole physical and legal custody of IMJ.

However, early on September 22, 2009, Lisa Miller and IMJ crossed the Canadian border between Buffalo, New York, and Ontario, Canada, in a car registered to a New York taxi company. Later that day, Lisa Miller and IMJ flew from Toronto, Ontario, Canada to Mexico City, Mexico. From Mexico City, they flew to El Salvador and on to Managua, Nicaragua. According to United States border records, they have not returned to this country.

The Government alleges that Kenneth Miller and Timothy

Miller[3] helped Lisa Miller and IMJ travel from Virginia to
Nicaragua through Canada and Mexico. Kenneth Miller, a Mennonite
minister and resident of Virginia, contacted a fellow Mennonite
in Canada to arrange for him to meet Lisa Miller and IMJ in
Canada and take them to the airport for their flight to
Nicaragua. Kenneth Miller contacted Timothy Miller, a Mennonite
living in Nicaragua, to arrange for their airline tickets and to
pick them up at the airport when they arrived.

Kenneth Miller was charged by criminal complaint with aiding
and abetting international parental kidnapping in violation of
the International Parental Kidnapping Crime Act ("IPKCA"), 18
U.S.C. §§ 1204 and 2, on November 18, 2011. He voluntarily
returned from Ireland, where he had been serving as a missionary
since the summer of 2010, in order to address the charges, and
was arrested on December 5, 2011, in the District of Vermont. On
December 15, 2011, the federal grand jury sitting in Burlington,
Vermont, returned a one-count indictment alleging that "[f]rom on
or about September 21, 2009, to on or about September 23, 2009,
in the District of Vermont and elsewhere, defendant KENNETH L.
MILLER aided and abetted Lisa Miller in the removal of a child
from the United States with the intent to obstruct the lawful
exercise of parental rights" in violation of 18 U.S.C. §§ 1204

---

[3] Timothy Miller is not related to Lisa Miller or Kenneth
Miller.

4

and 2.

**Discussion**

**I.    Motion to Dismiss for Failure to State an Offense**

According to Kenneth Miller, the indictment is facially defective because "it fails to allege that Lisa Miller could not remove a child from the United States or that she lacked parental rights or authorization to remove a child from the United States."  Mot. to Dismiss 2, ECF No. 21.

The indictment alleges that from on or about September 21, 2009, to on or about September 23, 2009, in the District of Vermont and elsewhere, defendant Kenneth Miller aided and abetted Lisa Miller in the removal of a child from the United States with the intent to obstruct the lawful exercise of parental rights, in violation of 18 U.S.C. §§ 1204 and 2.  Section 1204 makes it a federal offense to "remove a child from the United States, or attempt[] to do so, . . . with the intent to obstruct the lawful exercise of parental rights . . . ."  18 U.S.C. § 1204(a).

To establish a violation of the IPKCA, the government must prove that IMJ was previously in the United States; that Lisa Miller took IMJ from the United States to another country; that she did so with the intent to obstruct the lawful exercise of Janet Jenkins's parental rights; and that Kenneth Miller aided and abetted Lisa Miller in the commission of that crime.  18 U.S.C. §§ 1204(a), (2); *see United States v. Miller*, 626 F.3d 682, 688 (2d Cir. 2010).  To establish that Kenneth Miller aided

5

or abetted Lisa Miller in committing this crime, the government must prove that Kenneth Miller knowingly associated himself in some way with the crime, and that he participated in the crime by doing some act to help make the crime succeed. *See United States v. Reifler*, 446 F.3d 65, 96 (2d Cir. 2006); Leonard B. Sand, et al., Modern Federal Jury Instructions ¶ 11.01 (2011).

The indictment plainly is not facially defective; it "'track[s] the language of the statute charged and state[s] the time and place (in approximate terms) of the alleged crime.'" *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) (quoting *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999)). It satisfies Rule 7(c)'s requirement that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c), and it "sufficiently apprises the defendant of what he must be prepared to meet." *Russell v. United States*, 369 U.S. 749, 763 (1962) (quotation marks and citation omitted).

Kenneth Miller also asserts that the indictment fails to charge an offense, because Janet Jenkins had no lawful parental rights at the time of the offense. "Parental rights" is defined in the statute as "the right to physical custody of the child—(A)whether joint or sole (and includes visiting rights); and (B) whether arising by operation of law, court order, or legally binding agreement of the parties." 18 U.S.C. §

1204(b)(2).  According to the legislative history of the IPKCA,

"'parental rights' are to be determined by reference to State

law, in accordance with the Hague Convention on the Civil Aspects

of International Parental Child Abduction."  H.R. Rep. No. 103-

390, at *4 (1993), *reprinted in* 1993 U.S.C.C.A.N. 2419, 2422; *see*

*United States v. Amer*, 110 F.3d 873, 878 (2d Cir. 1997).  Chapter

I, Article 3 of this Convention provides that

> The removal or the retention of a child is to be
> considered wrongful where
> a) it is in breach of rights of custody attributed to a
> person, . . . either jointly or alone, under the law of
> the State in which the child was habitually resident
> immediately before the removal or retention; and
> b) at the time of removal or retention those rights
> were actually exercised, either jointly or alone, or
> would have been so exercised but for the removal or
> retention.
> The rights of custody mentioned in subparagraph a)
> above, may arise in particular by operation of law, or
> by reason of an agreement having legal effect under the
> law of that State.

Convention on the Civil Aspects of International Child Abduction,

art. 3, Oct. 25, 1980, T.I.A.S. No. 11670.  Further, if a State

has different laws applying to child custody in different

territorial units, "any reference to habitual residence in that

State shall be construed as referring to habitual residence in a

territorial unit of that State; [and] any reference to the law of

the State of habitual residence shall be construed as referring

to the law of the territorial unit in that State where the child

habitually resides.  *Id.* Art. 31; *see Feder v. Evans-Feder*, 63

F.3d 217, 221-222 (3d Cir. 1995).  Kenneth Miller reasons that

Virginia was IMJ's habitual residence, that Virginia law therefore applies, and that under Virginia law Jenkins could have no parental or custody rights with respect to IMJ, quoting Virginia's Marriage Affirmation Act ("MAA"). *See* VA Code Ann. § 20-45.3.[4]

By September 2009, Jenkins had been awarded visitation rights by a Vermont family court. *See M-J IV*, 2010 VT 98, ¶ 5, 12 A.3d at 772. The Virginia Court of Appeals had held that the Vermont court had properly exercised jurisdiction, had declined to consider whether the MAA applied, and had concluded that the Parental Kidnapping Prevention Act of 1980 in any event required Virginia courts to give full faith and credit to the Vermont court's child custody determinations. *See M-J II*, 637 S.E.2d at 334-35, 337; *see also* 28 U.S.C. § 1738A. The Vermont custody order had been recognized as the law of the case by the Virginia Supreme Court. *See M-J III*, 661 S.E.2d at 827. Moreover, in an unrelated case, the Virginia Court of Appeals subsequently held that the MAA did not void an order adjudicating custodial and visitation rights with respect to the child of a same-sex couple.

---

[4] Section 20-45.3 provides:
A civil union . . . between persons of the same sex purporting to bestow the privileges or obligations of marriage is prohibited. Any such civil union, . . . entered into by persons of the same sex in another state or jurisdiction shall be void in all respects in Virginia and any contractual rights created thereby shall be void and unenforceable.
Va. Code Ann. § 20-45.3.

*See Prashad v. Copeland*, 685 S.E.2d 199, 208 (Va. App. 2009) (holding that nonbiological parent's custodial and visitation rights arose out of his relationship with the child, not from his relationship with the biological parent).

Consequently, in this particular case the law of Vermont and the law of Virginia agree that Jenkins has parental rights with respect to IMJ. The Government has demonstrated that it has evidence under both Vermont and Virginia law to satisfy this element of its case.

Kenneth Miller also asserts that Jenkins was not exercising her custody rights at the time Lisa Miller took IMJ out of the country, as required to show wrongful removal under the Hague Convention. On the contrary, the Government has demonstrated that it has evidence that Janet Jenkins was actively exercising her custody rights with respect to IMJ at the time of her removal and for several years before, by seeking a modification of the custody order and by attempting to enforce multiple court orders directing that she be allowed to see and visit with IMJ.

The motion to dismiss for failure to charge an offense is therefore **denied.**

## II. Motion to Dismiss for Improper Venue

Kenneth Miller asserts that the Government lacks any evidence that would support venue in the District of Vermont. The Government responds that it will be able to show that venue

is proper under 18 U.S.C. § 3237(a), because essential elements of the offense took place in Vermont, and in the alternative, that it will be able to show that venue is proper under 18 U.S.C. § 3238 if the essential nature of the offense arose outside the United States.

The indictment alleges that Kenneth Miller committed the offense of aiding and abetting in the removal of a child from the United States with the intent to obstruct the lawful exercise of parental rights "in the District of Vermont and elsewhere." Indictment, ECF No. 16. The indictment therefore is not facially defective. When venue is disputed, but the indictment alleges venue without a facially obvious defect, the issue should be submitted to the jury. *See United States v. Engle*, No. 10-4850, ___ F.3d ___, 2012 WL 641031 at *3 (4th Cir. Feb. 29, 2012); *United States v. Perez*, 280 F.3d 318, 332 (3d Cir. 2002); *United States v. Sutton*, 13 F.3d 595, 598 (2d Cir. 1994). *But* see *United States v. Rommy*, 506 F.3d 108, 119 n.5 (2d Cir. 2007) (suggesting that venue disputes may not necessarily be submitted to a jury).

The Government has the burden of proving that venue is proper, by a preponderance of the evidence. *Id*. at 119. Upon the close of the evidence, the Court will determine whether sufficient evidence exists to support a jury finding that the crime was committed within the district. *See United States v.*

*Acosta-Gallardo*, 656 F.3d 1109, 1118 (10th Cir.), *cert. denied*, 132 S. Ct. 540 (2011).  Although the resolution of this issue must await a trial of this matter, the Court sets forth here its understanding of what the Government must prove in order to establish that venue properly lies in this District under § 3237(a) or § 3238.

A defendant has a constitutional right to be tried in the federal judicial district in which the crime occurred.  Article III of the United States Constitution provides that "[t]he trial of all Crimes, . . . shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed."  U.S. Const., art. III, § 2, cl. 3; *see also id.* amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law. . . .").[5]  This constitutional right "serves to shield a federal defendant from 'the unfairness and hardship' of prosecution 'in a remote place.'"  *Rommy*, 506 F.3d at 119 (quoting *United States v. Cores*, 356 U.S. 405, 407 (1958)); *see*

---

[5]  To be precise, Article III addresses venue, the place of trial, and the Sixth Amendment addresses vicinage, the place from which a jury must be selected.  The distinction is not significant in this case.  *See United States v. Royer*, 549 F.3d 886, 893 n.8 (2d Cir. 2008).

*also Johnston v. United States*, 351 U.S. 215, 220-21 (1956) (noting that the venue requirement "states the public policy that fixes the situs of the trial in the vicinage of the crime rather than the residence of the accused); *United States v. Johnson*, 323 U.S. 273, 275 (1944) (articulating an additional policy consideration of avoiding the appearance of abuse in the selection of a tribunal deemed favorable to the prosecution).

Rule 18 of the Federal Rules of Criminal Procedure provides that "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed.' Fed. R. Crim. P. 18; *see United States v. Saavedra*, 223 F.3d 85, 88 (2d Cir. 2000) ("Rule 18 . . . codifies the constitutional command . . . ."). Section 1204 does not have an express venue provision. The Government asserts, and the defendant does not disagree, that international parental kidnapping is a continuing offense. *See United States v. Clenney*, 434 F.3d 780, 781 (5th Cir. 2005) (per curiam); *cf. United States v. Rodriguez-Moreno*, 526 U.S. 275, 281 (1999) (noting that kidnapping is a continuing offense, committed in all of the places that any part of it took place); *United States v. Sandoval*, 347 F.3d 627, 634 (7th Cir. 2003) ("[A] continuing offense, like kidnapping, may be prosecuted 'in any district in which such offense was begun, continued, or completed.'") (quoting 18 U.S.C. § 3237(a)); *United States v. Seals*, 130 F.3d

451, 462 (D.C. Cir. 1997) (collecting cases holding that
kidnapping is a continuing offense); *United States v. Denny-Shaffer*, 2 F.3d 999, 1018 (10th Cir. 1993) (holding that the
kidnapping statute defines a continuing offense); *United States
v. Garcia*, 854 F.2d 340, 344 (9th Cir. 1988) (same); *Hess v.
United States*, 254 F.2d 578, 584 (8th Cir. 1958) (holding that §
3237 applies to kidnapping); *United States v. Fell*, No. 2:01-CR-12-01, 2005 WL 1026599 at *1 (D. Vt. Apr. 22, 2005) (same, citing
*Rodriguez-Moreno*, 526 U.S. at 281).

A.   Venue Under § 3237(a)

Continuing offenses without an express venue provision are
governed by 18 U.S.C. § 3237(a), which provides that an offense
"begun in one district and completed in another, or committed in
more than one district, may be . . . prosecuted in any district
in which such offense was begun, continued, or completed."  18
U.S.C. § 3237(a).  More specifically, "[any] offense involving
the use of the mails [or] transportation in interstate or foreign
commerce . . . is a continuing offense, and . . . may be . . .
prosecuted in any district from, through, or into which such . .
. mail matter . . . or person moves.  *Id.; see also United States
v. Reed*, 773 F.2d 477, 480 (2d Cir. 1985) ("[W]here the acts
constituting the crime and the nature of the crime charged
implicate more than one location, the constitution does not
command a single exclusive venue.").

As a continuing offense, venue for an international kidnapping offense is therefore appropriate in any district in which the offense was begun, continued, or completed. 18 U.S.C. § 3237(a). Because Kenneth Miller is charged as an aider and abettor, the Government may establish venue through the acts of Lisa Miller, because "[v]enue is proper where the defendant's accessorial acts were committed or where the underlying crime occurred." *United States v. Smith*, 198 F.3d 377, 383 (2d Cir. 1999).

"In determining whether an offense was committed in a particular district, [a court] look[s] to 'the nature of the crime alleged and the location of the act or acts constituting it.'" *United States v. Magassouba*, 619 F.3d 202, 205 (2d Cir. 2010) (quoting *United States v. Cabrales*, 524 U.S. 1, 5 (1998) ("The *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it.")). To determine the nature of the crime, "a court must initially identify the conduct constituting the offense." *Rodriguez-Moreno*, 526 U.S. at 279; *accord Magassouba*, 619 F.3d at 205.

The *Rodriguez-Moreno* Court emphasized that this inquiry involves examining the statute to ascertain the "essential conduct elements" of the crime. *Rodriguez-Moreno*, 526 U.S. at 280. Section 1204(a) prohibits the removal of a child from the

14

United States, with the intent to obstruct the lawful exercise of
parental rights. There are three elements to the offense: 1)
that the child was in the United States; 2) that the defendant
removed, or aided and abetted the removal of the child from the
United States; and 3) that the defendant did so with the intent
to obstruct the lawful exercise of parental rights. 18 U.S.C. §
1204(a); *see also* Leonard B. Sand, et al., Modern Federal Jury
Instructions ¶ 42.03 (2011). The elements of aiding and
abetting in this case are that the defendant 1) knew that the
child was being removed from the United States in order to
obstruct the lawful exercise of parental rights, and 2) "acted .
. . with the specific intent of advancing the commission of the
underlying crime." *United States v. Richards*, 302 F.3d 58, 67
(2d Cir. 2002) (quotation marks and citation omitted).

"Venue is proper only where the *acts* constituting the
offense—the crime's 'essential conduct elements'—took place,"
however. *United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir.
2011) (emphasis supplied); *accord United States v. Bowens*, 224
F.3d 302, 309 (4th Cir. 2000) ("[V]enue is limited to the place
'where the criminal act is done,'" however, and "limit[s] venue
in a criminal trial to the place of the essential *conduct*
elements of the offense.") (quoting *United States v. Anderson*,
328 U.S. 699, 705 (1946)). "[W]here 'the acts constituting the
crime and the nature of the crime charged implicate more than one

location,' venue is properly laid in any of the districts where an essential conduct element of the crime took place.'" *Ramirez*, 420 F.3d at 139 (quoting *Reed*, 773 F.2d at 480).

Additionally, in this Circuit, "when venue may properly lie in more than one district under a continuing offense theory, [a court] should also ask 'whether the criminal acts in question bear substantial contacts with any given venue.'" *Id.* (quoting *Saavedra*, 223 F.3d at 93); *see also Saavedra*, 223 F.3d at 93 ("The substantial contacts rule offers guidance on how to determine whether the location of venue is constitutional, especially in those cases where the defendant's acts did not take place within the district selected as the venue for trial."). This substantial contacts rule takes into account such factors as "the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate factfinding." *Reed*, 773 F.2d at 481; *accord Tzolov*, 642 F.3d at 321.

Kenneth Miller asserts that he did not commit any crime within the District of Vermont, that at all relevant times he was in Virginia, and that none of the essential conduct of the underlying crime took place within the District of Vermont. The Government contends that the "essential elements" of the crime took place in Vermont, in that Lisa Miller initiated child custody litigation in Vermont, that she and IMJ were parties to

this Vermont litigation from 2003 until 2009, and that Lisa
Miller removed IMJ "as a Vermont party."  Gov't Resp. 17, ECF No.
24.  It contends further that "[t]he essential conduct
criminalized by section 1204 is the removal of the child from the
jurisdiction addressing IMJ's parental rights.  Lisa Miller and
Kenneth Miller's conduct was aimed squarely at removing IMJ as a
party in Vermont litigation."  *Id.* at 18.

The statute, however, does not criminalize removing a child
as a party in litigation.  Nor does it criminalize removing a
child from a state's jurisdiction.  Nor does it criminalize
removing a child from the United States with the intent to avoid
the jurisdiction of a state court.[6]  Under *Rodriguez-Moreno*, and
Second Circuit caselaw following that decision, the essential
conduct elements of an offense are to be found by examining the
statute that proscribes the conduct.  *Rodriguez-Moreno*, 526 U.S.
at 280; *accord, e.g.*, *Magassouba*, 619 F.3d at 205-206; *Ramirez*,
420 F.3d at 143-144; *United States v. Rowe*, 414 F.3d 271, 278 (2d
Cir. 2005); *Saavedra*, 223 F.3d at 91.  Section 1204(a)
criminalizes removing a child from the United States with the
intent to obstruct the exercise of parental rights.  There is

---

⁶  The Court notes that technically IMJ is not a party to
the Miller-Jenkins litigation, nor is her continued presence
within the state necessary for the Vermont family court to retain
jurisdiction to make a child custody determination.  *See* Vt.
Stat. Ann. tit. 15, § 1032(a), (c) (2010); *see also M-J I*, 2006
VT ¶ 17, 912 A.2d at 959.

only one essential conduct element of this offense:  removing a child from the United States.[7]  *See Clenney*, 434 F.3d at 781-82. Whatever additional state or federal laws Lisa Miller may have violated, she did not violate 18 U.S.C. § 1204(a) until she allegedly acted to remove IMJ from the United States.  Kenneth Miller did not aid and abet a violation of § 1204 until he allegedly assisted in that removal.

Thus, in *United States v. Clenney*, an international parental kidnapping case, the Fifth Circuit rejected the contention that venue was proper where parental rights were exercised or where the child resided, and concluded that venue lay in the district from which the child was removed.  *Id.; cf. Tzolov*, 642 F.3d at 319-320 (analyzing conspiracy charges differently, permitting venue in any district in which an overt act in furtherance of the purpose of the conspiracy is performed, whether lawful or unlawful); *accord Royer*, 549 F.3d at 896; *Rommy*, 506 F.3d at 119-120; *United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003)).

---

[7]  The intent to obstruct is an essential element, but it is not an essential *conduct* element.  *See Clenney*, 434 F.3d at 781-82; *see also Ramirez*, 420 F.3d at 144 (holding that a scheme to defraud, an essential element of mail fraud, was not an essential conduct element for venue purposes); *United States v. Perlitz*, 728 F. Supp. 2d 46, 54 (D. Conn. 2010) (holding that formation of intent to engage in illicit sexual conduct is an essential element of 18 U.S.C. § 2423(b), but not an essential conduct element for venue purposes, following *Ramirez*).  In any event, the Government does not contend that either Lisa Miller or Kenneth Miller formed an intent to obstruct within the District of Vermont.

To be sure, the Government must prove that Jenkins had parental rights, and for that purpose will show that her parental rights arose from orders issued by a Vermont court. It undoubtedly will seek to introduce evidence that Lisa Miller willfully and repeatedly flouted those orders, and ultimately left the country to avoid complying with those orders. Nevertheless, in order for venue to properly lie in this district under § 3237(a), the Government must show that Lisa Miller or Kenneth Miller did or caused something to be done in the District of Vermont that furthered the crime of international parental kidnapping, or that it was "'foreseeable that such an act would occur in the district of venue [and it did].'" *Royer*, 549 F.3d at 894 (quoting *Svoboda*, 347 F.3d at 483).

If the Government presents evidence of such conduct, then the Court will consider whether these acts bear substantial contacts with the District of Vermont. *See id.* at 895 ("[V]enue must not only involve some activity in the situs district but also satisfy the 'substantial contacts' test of *Reed*."). The *Reed* factors—the site of the acts, the elements and nature of the crime, the locus of the effect of the criminal conduct and the suitability of the district for accurate factfinding—will only come into play if the Court determines that § 3237(a) permits venue to lie in the District of Vermont. *See Saavedra*, 223 F.3d at 92-93.

B.    Venue Under § 3238

"[W]here the acts constituting the crime and the nature of the crime charged implicate more than one location, the constitution does not command a single exclusive venue." *Reed*, 773 F.3d at 480.   The Government argues in the alternative that 18 U.S.C. § 3238 establishes venue for this offense.   Section 3238, captioned "Offenses not committed in any district," provides that "[t]he trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, . . . is arrested or is first brought . . . ."  18 U.S.C. § 3238.   The Second Circuit, in dictum, indicated that this provision "applies only to those offenses 'not committed in any district,' as its title indicates." *United States v. Gilboe*, 684 F.2d 235, 239 (2d Cir. 1982); *see also United States v. Pace*, 314 F.3d 344, 351 (9th Cir. 2002) ("[Section] 3238 does not apply unless the offense was committed entirely on the high seas or outside the United States (unless, of course, the offense was 'begun' there."); *cf. United States v. Bin Laden*, 146 F. Supp. 2d 373, 381 (S.D.N.Y. 2001) (holding that § 3238 supplied venue for a conspiracy offense that began outside the United States, even though overt acts were committed within the United States, citing and quoting 2 Charles Alan Wright, Federal Practice and Procedure § 304 (3d ed. 2000)).

More recently, the Third Circuit in *United States v. Pendleton*, 658 F.3d 299 (3d Cir. 2011), considered whether § 3238 applies when a defendant commits part of his offense within the United States and part of his offense overseas. The *Pendleton* court applied *Rodriguez-Moreno* to identify the conduct constituting the offense and then to discern the location of the criminal acts, in a prosecution for illicit sexual conduct with a minor in a foreign place in violation of 18 U.S.C. § 2423(c) and (f)(1). 658 F.3d at 303. It concluded that the *locus delicti* of a § 2423(c) offense is the place where the illicit sex occurs, and given that the "crux" of the defendant's offense was committed out of the jurisdiction of any district, § 3238 applied. *Id.* at 304-05; *see also United States v. Levy Auto Parts*, 787 F.2d 946, 952 (4th Cir. 1986) (holding that an aborted conspiracy was "essentially foreign," justifying venue under where one of the co-conspirators was arrested); *Bin Laden*, 146 F. Supp. 2d at 381.

*Gilboe* involved a fraud on the international shipping industry. The defendant was arrested in the District of Connecticut, and tried and convicted of wire fraud and transportation of funds obtained by fraud in the Southern District of New York. On appeal Gilboe claimed that he could only have been tried in the District of Connecticut, under §

21

3238. The Second Circuit, assuming that Gilboe's objection to venue had been preserved, held that Gilboe was properly tried in the Southern District of New York under § 3237(a), on the basis of numerous communications between the district and various overseas locations, and the fact that the proceeds of the fraud were transferred through the district. 684 F.2d at 239. In rejecting Gilboe's claim that § 3238 was the only applicable venue statute, it noted that § 3238 applies only to offenses not committed in any district. *Id.*

This Court believes that were the issue squarely presented to the Second Circuit today, the court of appeals would apply *Rodriguez-Moreno* and identify the essential conduct elements of the offense. If the essential conduct elements were begun or committed outside of any district then venue would be proper in the district where the defendant was arrested or first brought. *See Pendleton*, 658 F.3d at 303-05. Accordingly, if the Government presents evidence that the essential conduct of removing a child from the United States occurred outside the United States, then venue will be appropriate in the District of Vermont, where Kenneth Miller was arrested. *See* § 3238; Gov't Resp. 20 ("After all, the removal of the child cannot be accomplished anywhere in the United States.").

## Conclusion

For the reasons stated above, Kenneth Miller's motion to

dismiss for failure to state an offense or for improper venue is denied.

Dated at Burlington, in the District of Vermont, this 25th day of April, 2012.

<u>/s/William K. Sessions III</u>
William K. Sessions III
United States District Court