UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | |
| v. | : | Crim. No. 2:11-cr-161-1 |
| | : | |
| KENNETH L. MILLER, | : | |
| | : | |
| Defendant. | : | |

**Memorandum and Order**

The parties seek further clarification on the issue of the lawful exercise of parental rights in this case.

The International Parental Kidnapping Crime Act ("IPKCA"), 18 U.S.C. 1204, prohibits the removal of a child from the United States with intent to obstruct the lawful exercise of parental rights. "Parental rights," as used in the statute means "the right to physical custody of the child . . . whether joint or sole[, . . .] and includes visiting rights." *Id.* § 1204(b)(2)(A). These rights may arise "by operation of law, court order, or legally binding agreement of the parties." *Id.* § 1204(b)(2)(B).

"'Parental rights are to be determined by reference to State law, in accordance with the Hague Convention.'" *United States v. Amer*, 110 F.3d 873, 878 (2d Cir. 1997) (quoting H.R. Rep. No. 103-390, at 4 (1993), *reprinted in* 1993 U.S.C.C.A.N. 2419, 2422). Article 3 of the Convention provides that removal or retention of a child is "considered wrongful where . . . it is in breach of rights of custody . . . under the law of the State in which the

child was habitually resident immediately before the removal or retention; and at the time of removal or retention those rights were actually exercised . . . or would have been so exercised but for the removal or retention." Convention on the Civil Aspects of International Child Abduction, art. 3, Oct. 25, 1980, T.I.A.S. No. 11670. The parties do not dispute that the United States was the "State" in which the child in this case was habitually resident immediately before her removal.

Article 31 of the Convention provides that for States that have more than one system of law with regard to custody of children applicable in different territorial units, "any reference to the law of the State of habitual residence shall be construed as referring to the law of the territorial unit in that State where the child habitually resides." *Id.* art. 31. The Third Circuit Court of Appeals has interpreted this Article to mean that "[i]f a child's habitual residence is a State which has more than one territorial unit, the custody rights laws of the territorial unit apply," specifying that "i]n the United States, the law in force in the state in which the child was habitually resident . . . would apply to determine whether a removal or retention was wrongful." *Feder v. Evans-Feder*, 63 F.3d 217, 221- 22 & n.8 (3d Cir. 1995).[1]

---

[1] That is not the only interpretation to place on Article 31. Given that in this country "'the laws of the United States are laws in the several States, and just as much binding on the

2

It is undisputed that this child habitually resided in Virginia. Therefore in accordance with *Amer* and *Feder*, the law in force in Virginia in September 2009 applies to determine whether Janet Jenkins had parental rights. *See Amer*, 110 F.3d at 878; *Feder*, 63 F.3d at 221-222 & n.8.

The Supremacy Clause of the United States Constitution "declares federal law the 'Supreme law of the land,' and state courts must enforce it, notwithstanding any state law to the contrary. *See* U.S. Const. Art. VI, cl. 2. "The Parental Kidnapping Prevention Act . . . imposes a duty on the States to enforce a child custody determination entered by a court of a sister State if the determination is consistent with the provisions of the Act. . . . Once a State exercises jurisdiction consistently with the provisions of the Act, . . . all States must accord full faith and credit to the first State's ensuing custody decree." *Thompson v. Thompson*, 484 U.S. 174, 175-77 (1988) (*quoted in Miller-Jenkins v. Miller-Jenkins*, 637 S.E.2d 330, 333-34 Va. App. 2006)); *see* 28 U.S.C. § 1738A.

The Virginia Court of Appeals declared in 2006 that the

---

citizens and courts thereof as the State laws are . . . [t]he two together form[ing] one system of jurisprudence, which constitutes the law of the land for the State,'" *Howlett v. Rose*, 496 U.S. 356, 367 (1990) (quoting *Claflin v. Houseman*, 93 U.S. 130, 136-37 (1876)), it is an open question whether the United States "has two or more systems of law applicable in different territorial units" with respect to the custody of children. **cite** In this case, however, the outcome is the same, whether the law in force in the United States or the law in force in Virginia applies.

3

Vermont family court had jurisdiction over the issues of custody and visitation with respect to this child, and that a Virginia court must extend full faith and credit to its orders. *Miller-Jenkins*, 637 S.E.2d at 337-38. In 2008, the Supreme Court of Virginia confirmed the Court of Appeals' judgment as the law of the case. *Miller-Jenkins v. Miller-Jenkins*, 661 S.E.2d 822, 827 (Va. 2008), *cert. denied*, 555 U.S. 1069 (2008); *see also Miller v. Jenkins*, No. 0705-09-4, 2010 WL 605737 at *3 (Va. App. Feb. 23, 2010) (reiterating that regardless of the applicability of *Miller-Jenkins* "in cases involving other parties, it *is* the law of the case for custody and visitation matters between these parties"). As a matter of law, as of September 2009, Janet Jenkins had parental rights according to the law in force in Virginia. The jury will be instructed that the Rutland, Vermont family court's orders regarding custody and visitation defined parental rights in this case.

Dated at Burlington, in the District of Vermont, this 10th day of August, 2012.

/s/ William K. Sessions III
William K. Sessions III
United States District Court